**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAHA MADHAT A. B.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   25-cv-1030** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **March 11, 2026**

Plaintiff Maha Madhat A. B. brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying her claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 14) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I.    PROCEDURAL HISTORY

On August 7, 2015, Plaintiff filed for SSI, alleging disability since November 14, 2013, due to fecal urgency and incontinence, related anxiety and depression, and constipation.  (R. 555, 603, 607).  Plaintiff's application was denied at the initial level, and she requested a hearing before an Administrative Law Judge (ALJ).  (R. 147-51, 153-55).  After the first hearing was postponed due to a problem with the translator, a second one was held on February 13, 2018.  (R. 66-90).  The ALJ subsequently issued an unfavorable decision, but it was vacated by the Appeals

Council to cure any Appointments Clause defects. (R. 99-114, 117). A third hearing scheduled for August 12, 2021, was continued due to an incomplete record. (R. 64). On December 2, 2021, a fourth hearing was held, resulting in another unfavorable decision on February 9, 2022, but after Plaintiff requested review the Appeals Council vacated it because the hearing recording was inaudible in violation of 20 C.F.R. § 416.1451(b). (R. 120-40, 143). On December 14, 2023, a fifth hearing was held at which Plaintiff, represented by counsel, and a vocational expert (VE) testified. (R. 41-58). On February 28, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 19-40). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on January 13, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 8-13).

On February 27, 2025, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) five days later. (Consent, ECF No. 4). On September 4, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 14). The Commissioner filed a response on November 7, 2025, and Plaintiff filed a reply on January 25, 2026. (Resp., ECF No. 20; Reply, ECF No. 30).

## II.     FACTUAL BACKGROUND[1]

Plaintiff graduated from a four-year college. (R. 608). She previously worked as a customer service representative at a retail store. (*Id.*).

---

[1] In keeping with the issues raised in Plaintiff's request for review, the Court summarizes only the evidence related to her bowel conditions.

### A.    Medical Evidence

On March 18, 2015, Plaintiff was examined by Philip Pearson, M.D., at Bryn Mawr Hospital.  (R. 1286).  She complained of "pelvic pain and some constipation," and the doctor noted her history of colon cancer.  (*Id.*).  The examination returned normal results except for a "very tender" rectum.  (*Id.*).  He recommended MiraLAX and fiber products, increasing water consumption, and, if pain persisted, pelvic floor therapy.  (*Id.*).  On March 24, 2015, Plaintiff reported to her primary care practice, Brinton Lake Medical Center (Brinton Lake), that she had been constipated without abdominal pain for the last two days despite taking MiraLAX and fiber gummies.  (R. 1733).  She was advised to start taking Metamucil powder.  (R. 1736).  One week later, a colonoscopy previously recommended by Dr. Pearson was normal, and on June 15, 2015, a CT showed "nonspecific tissue density in the pelvis adjacent to the rectum" but no evidence of tumors.  (R. 853).  On June 18, 2015, Plaintiff visited oncologist Sandra Urtishak, M.D., of the Main Line Cancer Center for a follow up visit after reversal of her ostomy the prior October.  (R. 1450).  Plaintiff complained of "alternating constipation with diarrhea" unrelieved with MiraLAX and other medications, which she also expressed reluctance to take because at times they caused urgent and loose bowel movements.  (*Id.*).  Dr. Urtishak recommended a pelvic MRI, which revealed no evidence of tumors or lymphadenopathy.  (R. 863, 1451).

On July 12, 2015, Plaintiff went to Paoli Hospital with gradual onset mild but constant upper abdomen pain, cramping and nausea after failing to defecate for the last week.  (R. 1322).  Her symptoms were "[n]ot relieved by anything," although she had not taken any MiraLAX.  (*Id.*).  A CT scan revealed a "moderate" to "large amount of stool in the abdomen [that] may be reflective of constipation."  (R. 1323, 1342).  She was prescribed Lactulose, directed to take MiraLAX and increase water consumption, and discharged in fair condition.  (R. 1325).  On

3

October 6, 2015, Plaintiff saw Dr. Urtishak for another follow up visit. (R. 1437). Dr. Urtishak noted that Plaintiff's primary complaint continued "to be alternating constipation and then fecal urgency" and that although she was taking MiraLAX and Lactulose she still only moved her bowels twice weekly. (*Id.*). Moreover, when the constipation broke, Plaintiff felt she had to remain close to a restroom due to her "significant fecal urgency." (*Id.*). She was also fatigued on these days. (*Id.*).

On December 4, 2015, physical consultative examiner Kathleen Mullin, M.D., completed an internal medicine examination of Plaintiff. (R. 948-51). She noted a history of stage III poorly differentiated adenocarcinoma of the rectum in 2012 treated with chemotherapy, radiation and a bowel resection with an ileostomy placed but later reversed. (R. 948). She observed that Plaintiff's primary complaints were "severe constipation and rectal pain," with passage of only one to two small stools weekly not improved with MiraLAX or Lactulose. (*Id.*). Plaintiff additionally reported fecal urgency sometimes resulting in accidents when she is in public. (*Id.*). Dr. Mullin noted that a colonoscopy from April of that year was normal and a CT scan from June showed pelvic nonspecific tissue density near the rectum but no evidence of metastatic disease. (*Id.*). Plaintiff's activities of daily living (ADLs) included cooking a few times weekly, laundry weekly and occasional shopping. (R. 949). Her abdominal examination was noteworthy only for obesity. (*Id.*). The doctor diagnosed chronic constipation, rectal pain, intermittent bowel incontinence and past adenocarcinoma of the rectum and assessed a fair prognosis. (R. 950).

On January 28, 2016, Plaintiff returned to Dr. Urtishak complaining about ongoing "difficulty with her bowels, particularly intermittent difficulty with fecal urgency," as well as "intermittent constipation." (R. 1431). These symptoms caused her to mistrust her ability to go out in public. (*Id.*). Dr. Urtishak prescribed cholestyramine. (R. 1432). On July 28, 2016,

4

Plaintiff again visited Dr. Urtishak and reported intermittent constipation with rectal pain at times alternating with diarrhea, unrelieved by MiraLAX. (R. 1421). Dr. Urtishak directed Plaintiff to return within three months. (R. 1422).

On August 19, 2016, Plaintiff presented to Chester County Hospital after fainting while attempting to move her bowels. (R. 1362). She reported that stool softeners had not helped. (*Id.*). A physical examination revealed a "[t]ight rectum," with "no reachable stools . . . ." (R. 1364). An x-ray confirmed "a moderate amount of stool" in the abdomen. (R. 1386). Plaintiff was discharged with Fleet Enemas and provided literature on managing constipation. (R. 1365, 1380-81). On August 30, 2016, Plaintiff attended a follow up appointment at Brinton Lakes, where she reported constipation for the last two years with her last bowel movement three days prior. (R. 1710). She was taking MiraLAX "with some relief of symptoms," although she reported pain after drinking it. (*Id.*). Plaintiff was prescribed Linzess and ranitidine. (R. 1711).

On July 27, 2017, Plaintiff told Dr. Urtishak that she was still struggling with constipation lasting several days alternating with frequent loose stools, recently accompanied by increased abdominal pain and a palpable lump in the upper left quadrant. (R. 1407). It was further noted that Plaintiff had stopped taking most of her irritable bowel syndrome medications. (*Id.*). Plaintiff returned to Brinton Lake on November 14, 2017, complaining of nausea, bloating, fatigue, epigastric discomfort and decreased appetite for the last three days, with one small bowel movement four days earlier. (R. 1679). She was prescribed Omeprazole, directed to increase fluids and fiber, and referred to a gastroenterologist. (R. 1684).

On February 14, 2018, a CT scan showed an unremarkable and stable pelvis. (R. 1853). Plaintiff's bowel loops were normal in caliber with no evidence of obstruction or perirectal adenopathy, with unchanged low rectal anastomotic sutures with mild circumferential wall

thickening and mild stranding and thickening in the presacral region. (*Id.*).

On August 18, 2018, Plaintiff was seen for a follow up visit by Dr. Urtishak, to whom she reported ongoing struggles with "cramping, sharp pain in [her] abdomen, some days 9/10," and "intermittent constipation" nearly every day "followed by a fecal urgency," requiring her to spend most of the day in the restroom according to her husband. (*See* R. 1871-72 ("When constipation resolves she has diarrhea with incontinence.")).  The Linzess prescribed by her gastroenterologist was "not working." (R. 1871).  However, her carcinoembryonic antigen (CEA) levels remained low and normal (consistent with a lack of tumors), and she did not need to return for six months. (R. 1870-71).  Approximately one month later, at a Brinton Lake office visit Plaintiff complained of constipation, nausea, abdominal pain, bloating and changes in bowel habits, although upon examination her abdomen was normal except for mild lower left quadrant pain with palpitation. (R. 1661).

A February 21, 2019 CT scan showed a stable abdomen and pelvis with no evidence of recurrent metastatic disease. (R. 1888).  Plaintiff remained on a six-month follow-up schedule. (R. 1897).

At Plaintiff's annual physical on June 18, 2019, she complained of constipation but denied indigestion, nausea, vomiting, abdominal bloating, and changes in bowel habits. (R. 1653).  On August 5, 2019, at a follow up visit with Dr. Urtishak, Plaintiff was doing "well" "overall," albeit with some continued difficulty with intermittent constipation despite taking Linzess. (R. 1919).  She had "some occasional rectal pain," but at one to two times per month it was "less frequent than previously" and was responsive to naproxen and Valium. (*Id.*).  Blood tests showed that her CEA levels remained "normal and stable." (*Id.*).  On January 20, 2020, Plaintiff reported at a Brinton Lake visit that she was only moving her bowels weekly. (R.

1647).  She was directed to take her Linzess daily or every other day.  (*Id.*).

On February 28, 2020, physical consultative examiner David B. Klebanoff, M.D., completed an internal medicine examination of Plaintiff.  (R. 1597-1618).  He explained that Plaintiff's chief complaints are rectal pain, constipation and diarrhea requiring her to wear protective underwear because of "fecal incontinence and explosive bowel movements which acutely come on without notice.  This has caused her great difficulty with being out in public trying to do her daily activities."  (*Id.*).  She also experiences related chills, fatigue and abdominal discomfort.  (*Id.*).  At the time of the examination, Plaintiff and her husband were "strongly considering replacement of the ostomy bag to try to alleviate some of these symptoms" but were having difficulty obtaining insurance approval.  (*Id.*).

Plaintiff reported ADLs including cooking, cleaning, laundry, shopping, childcare, personal care, watching television, listening to the radio and using the internet.  (R. 1598).  Her abdominal examination was normal.  (R. 1599).  Dr. Klebanoff diagnosed her with a history of stage III colon cancer, chronic constipation, diarrhea, rectal pain and fecal incontinence and assessed her prognosis as fair.  (R. 1600).

At an August 4, 2020 Brinton Lake visit, Plaintiff endorsed epigastric pain and cramping for the last four days with constipation, gas, bloating, and (for the last two days) indigestion.  (R. 1638).  She was referred to a gastroenterologist and directed to obtain a CT scan, change her diet and increase her fluid intake.  (R. 1643).  During a July 1, 2021 return visit, she was prescribed Linzess as needed and advised to increase her fiber and water intake.  (R. 1629).  During an October 25, 2021 visit at Brinton Lake, Plaintiff complained of constipation and changes in bowel habits and was diagnosed with adhesions and constipation, for which she was prescribed Motrin as needed and Linzess, respectively.  (R. 1646, 1648).

### B.    Nonmedical Evidence

The record also contains nonmedical evidence.  On September 30, 2015, Plaintiff, through her husband, completed an Adult Function Report in which she indicated that she cannot work because of fecal urgency, colorectal pain and "constipation 4-5 days a week with the same need to go to the restroom."  (R. 614, 621).  She added that she also wakes up three to four times per night to use the restroom for 15 to 20 minutes at a time.  (R. 615).  She described ADLs of cooking for two to three hours daily, shopping for three to four hours every few days, going to appointments, cleaning, washing dishes, ironing, watching television, caring for her eight-year-old daughter and helping her with her homework, even though she "spend[s] most of the day in the restroom."  (R. 614, 616-17, 619).  She goes outside daily, socializes outside the home and can ride in a car, although her fecal urgency makes these activities more difficult.  (R. 617-18, 620).

In addition, the record contains photographs relating to Plaintiff's incontinence and a daily log from November 2023 memorializing her difficulties with constipation, rectal pain, fecal urgency and incontinence and associated accidents.  (R. 753-61).

At the December 14, 2023 administrative hearing, Plaintiff testified that she is unable to work due to constipation lasting up to five days and requiring her to spend about 30 minutes at a time attempting to defecate, as well as fecal urgency necessitating that she use the restroom anywhere from every five minutes to every two hours.  (R. 47, 50).  She reported that her constipation has not improved with stool softeners prescribed by a stomach specialist and sometimes requires emergency room care.  (R. 47-48).  She added that her medications cause stomach pain, nausea and chills and may not take effect for hours, leading to unexpected, urgent bowel movements requiring the use of adult diapers and interfering with social engagements and

8

shopping.  (R. 49-54).  She stated that she must shower after accidents to get clean.  (R. 52).

Plaintiff related that these conditions worsen and disrupt her sleep at night, leading to fatigue the

following day.  (R. 50).  She described a typical day as having breakfast, reading or visiting her

grandson, and cooking, but she does not babysit or clean.  (*Id.*).

### III.    ALJ'S DECISION

Following the administrative hearing held on December 14, 2023, the ALJ issued a

decision in which she made the following findings:

1.    The claimant has not engaged in substantial gainful activity since June 30, 2015, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: poorly differentiated adenocarcinoma of the rectum; fecal incontinence, intermittent; and obesity. (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: frequently climb ramps and stairs; frequently stoop; occasionally climb ladders, ropes, and scaffolds; occasional kneeling, crouching, crawling; avoid concentrated exposure to hazardous or dangerous machinery and unprotected heights; work allowed off task up to five percent of the workday, in addition to regularly scheduled breaks; with ready access to a bathroom.

5.      The claimant is capable of performing past relevant work as a sales clerk. This

work does not require the performance of work-related activities precluded by the

claimant's residual functional capacity (20 CFR 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security

Act, since June 30, 2015, the date the application was filed (20 CFR 416.920(f)).

Accordingly, the ALJ found Plaintiff was not disabled. (R. 31).

## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §

1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity. If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities. If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work. If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform her past work. If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4). The

disability claimant bears the burden of establishing steps one through four. If the claimant is

determined to be unable to resume previous employment, the burden shifts to the Commissioner

at step five to establish that, given the claimant's age, education, work experience, and mental

and physical limitations, he is able to perform substantial gainful activities in jobs existing in the

national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


**V.    DISCUSSION**

In her request for review, Plaintiff raises five issues:

(1)     The ALJ erred in not updating the medical record as
        requested, and as the ALJ represented she would do so.

(2)     The ALJ erred in not properly considering if the plaintiff's
        medical conditions were equivalent to the limitations in
        listing 5.6, Inflammatory Bowel Disease.

(3)     The ALJ erred in failing to recognize, as an impairment, the
        plaintiff's severe and frequent painful constipation, which
        resulted in her spending significant amounts of time on a
        toilet, trying to have a bowel movement.

(4)     The ALJ erred in not accounting for the plaintiff's
        unpredictable episodes of fecal incontinence.

(5)    The ALJ's residual functional capacity evaluation did not properly account for the plaintiff's limitations.

(Pl.'s Br., ECF No. 14, at 4).[2]

### A.    Listing 5.06 (Inflammatory Bowel Disease)

### 1.    The Parties' Positions

Plaintiff posits that pursuant to Social Security Ruling (SSR) 96-6p, applicable to her claims given their pre-March 27, 2017 filing date, the ALJ was required to obtain a medical expert's advice in determining whether her condition equaled the IBD listing.  (Pl.'s Br., ECF No. 14, at 22 (citing *Harper v. Comm'r of Soc. Sec.*, 813 F. App'x 775, 779 n.4 (3d Cir. 2020))).  She excerpts the ALJ's step three discussion of the listing at length but dismisses it as "really just a recitation" of the listing's components without addressing the critical question of whether her condition was equivalent in severity.  (*Id.* at 22-24).  Acknowledging that she bears no diagnosis for IBD, she maintains that the ALJ was nonetheless alerted to the need to evaluate equivalency under Listing 5.06, and obtain a medical expert opinion to properly do so, by Plaintiff's pre-hearing brief, which noted the reference to IBD on her Disability Determination Transmittal (indicating that she was evaluated as having the condition at the pre-ALJ level); listed the criteria

---

[2]  The Court has reordered Plaintiff's arguments to correspond to the five steps of the sequential analysis.  Although Plaintiff's third argument listed here appears to arise at step two, its substance as set forth in her brief is that the ALJ's error at that stage is not harmless because the ALJ also failed to adequately address her constipation in the later RFC analysis.  (Pl.'s Br., ECF No. 14, at 6).  Accordingly, the Court considers her step three argument regarding the inflammatory bowel disease (IBD) listing prior to this purported step two claim.  Moreover, because this claim revisits Plaintiff's earlier, lengthier argument regarding allegedly missing documents, (*id.* at 17-18, 21-28), the Court considers these two claims together.  Finally, given the overlap between Plaintiff's fourth and fifth claims, as well as the fact that the Commissioner and Plaintiff both address the claims as one in their response and reply, respectively, (Resp., ECF No. 20, at 7-10; Reply, ECF No. 30, at 8), the Court considers these claims in tandem as well.

for evaluating functional incapacity set forth in Listing 5.00D, "What is inflammatory bowel disease (IBD), and how do we evaluate it under 5.06?"; quoted Listing 5.06C permitting a showing of equivalence based upon "[r]epeated complications of IBD"; and pointed to exhibits documenting her symptoms of "alternating constipation and diarrhea, unpredictable and uncontrolled fecal incontinence, and severe pain . . . ." (*Id.* 24-26 (citing R. 98, 747-48)).

Next, Plaintiff highlights that the case was never evaluated by a non-examining State agency doctor, and although she underwent physical consultative examinations by two doctors, neither doubted her history of constipation and fecal urgency or was questioned about any listings or equivalence thereto. (*Id.* at 26). Specifically, she claims that Dr. Mullin "did not offer any limitations on functional ability" and that Dr. Klebanoff offered only findings in functional areas that would not turn up limitations based on "the type of physical limits testing done" or "[i]f the plaintiff was not having acute problems at the time of the exam . . . ." (*Id.* at 26-27 (citing R. 1601-03, 1606-10)). Plaintiff thus concludes that the record contained no opinions regarding the listings and that the ALJ merely relied upon "her own, non-existent medical expertise." (*Id.*).

Returning to SSR 96-6p, Plaintiff summarizes that it requires ALJs to: (1) consider State agency physicians' opinions when considering whether a claimant has a condition equivalent to a listing; and (2) obtain a new opinion "in certain situations" prior to making this determination. (*Id.* at 27). She submits that given this ruling, the lack of guidance in the record, the ALJ's duties under the case law as an "investigating magistrate[,]" and her earlier representation by legal aid attorneys (which Plaintiff likens to "hav[ing] appeared *pro se*," thereby giving rise to "heightened" duties for the ALJ), the ALJ should have obtained a medical opinion in this case prior to rendering her decision. (*Id.* at 28 (citing *Sims v. Apfel*, 530 U.S. 103 (2000); *Rosa v.*

13

*Colvin*, 956 F. Supp. 2d 617 (E.D. Pa. 2013))).

In a related claim, Plaintiff posits that the ALJ erred by failing to update the record to obtain additional medical evidence from Brinton Lake as she agreed at the hearing in response to Plaintiff's request.  (Pl.'s Br., ECF No. 14, at 17).  While conceding that as the claimant she has "the primary responsibility" to obtain medical records, she again cites *Rosa* and notes that the ALJ's duty to assist in that regard is heightened because this case is for SSI only and she was formerly represented by legal aid, who, like Plaintiff herself, "presumably [lacked] the resources to obtain the records . . . ."  (*Id.* at 18 (also citing *Ferguson v. Schweiker*, 765 F.2d 31, 36 n.4 (3d Cir. 1985))).

The Commissioner counters with a brief recitation of the applicable background law and adds that ample evidence supports a clear inference that the ALJ determined that Plaintiff's gastrointestinal symptoms did not meet or equal Listing 5.06, which the ALJ explicitly referenced in her decision.  (Resp., ECF No. 20, at 7).  The Commissioner highlights largely benign abdominal, pelvic and colorectal examinations and imaging (except for evidence of prior surgical repair); a CEA test showing no evidence of tumors; a normal physical consultative examination; an annual physical with no complaints of gastrointestinal symptoms; and a report of improvement with medication and limited duration pain.  (*Id.* at 8-10 (citing R. 853, 863, 949-50, 1286, 1627-31, 1635, 1638, 1642, 1648, 1653, 1658, 1661, 1853, 1870-71, 1888, 1897, 1919)).

Turning to Plaintiff's related contention regarding the ALJ's alleged failure to develop the record, the Commissioner asserts that Plaintiff cannot show that the ALJ committed a harmful error because Plaintiff has failed to establish that medical documents are missing and, even if they are, her current counsel could have submitted them before this Court pursuant to

14

sentence six of 402 U.S. 405(g).  (*Id.* at 10-11 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000); *Laborers Int'l Union of N. Am. AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *Sesko v. Comm'r of Soc. Sec.*, No. 08-CV-0151, 2009 WL2579304, at *7 (W.D. Pa. Aug. 18, 2009) (citation omitted))).  Thus, the Commissioner maintains that Plaintiff's speculation about possibly missing documents does not warrant remand.  (*Id.* at 11 (citing 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a))).

In reply, Plaintiff agrees with the Commissioner's statement of the applicable law insofar as he notes that it is "stringent" as to her meeting all requirements of the listing, but she accuses him and the ALJ of ignoring the regulatory framework (i.e., SSR 96-6p) in place at the time of her filing, which she claims required the ALJ to obtain an opinion from a medical expert appointed by the Agency for that purpose.  (Reply, ECF No. 30, at 7).  Accordingly, she maintains that the fact that the ALJ may have considered the relevant listing does not save the decision.  (*Id.* at 8).  In addition, Plaintiff repeats her contentions regarding "the high probability that there were additional relevant medical records" and accuses the ALJ of acting in an "offensive" and "fundamentally unfair manner," however, she concedes that the supposed failure to develop the record may be, "perhaps, harmless error," since it was invoked by the ALJ to refute "an allegation that plaintiff never even made . . . ."  (*Id.* at 8-9 (citing *Sims*, 530 U.S. 103; *Ferguson*, 765 F.2d at 36 n.4)).

### 2.    Analysis

At step three, the ALJ analyzes whether a claimant's impairments or combination of impairments meet or medically equal one of the listings that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity.  20 C.F.R. § 416.925(a).  This inquiry functions to identify those claimants whose medical impairments are so severe they

would be found disabled regardless of their vocational background, making further inquiry unnecessary. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Pursuant to SSR 96-6p, "before a decision of disability based on medical equivalence can be made," however, the ALJ must obtain "[a]n updated medical expert opinion . . . ." SSR 96-6p. But the claimant ultimately bears the burden of producing medical findings showing her impairments meet or medically equal a listed impairment. *See Burnett*, 220 F.3d at 120 n.2. To meet this burden, the claimant must establish all the requirements of the relevant listing. *Sullivan*, 493 U.S. at 530 (claimant who meets only some of the listing requirements, "no matter how severely, does not qualify"); *see also Hartung v. Colvin*, No. 12-6155, 2016 WL 2910096, at *5 (E.D. Pa. May 19, 2016). Meeting a listing cannot be based on diagnoses alone. 20 C.F.R. § 416.925(d). Because matching or equaling a listing at step three results in an automatic finding of disability, the listings are strictly construed against claimants. *See Sullivan*, 493 U.S. at 530-32.

But even if SSR 96-6p applies, as Plaintiff submits,[3] any error by the ALJ in not seeking a medical opinion on equivalence was harmless because the record indicates that substantial evidence supports the ALJ's determination that Plaintiff's symptoms did not reach the high bar of meeting or equaling the IBD listing. *See O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 414-16 (6th Cir. 2020) (declining to decide whether SSR 96-6p or 17-2p applied, including

---

[3] Plaintiff contends that in *Hopkins* the Third Circuit Court of Appeals "held that SSR 17-2p is not retroactive to cases filed before [March 27, 2017] and SSR 96-6p applies." (Pl.'s Br., ECF No. 14, at 22). In fact, in that case the plaintiff asserted that SSR *96-2p* applied to such claims and our appellate court agreed, *Hopkins*, 813 F. App'x at 779 n.4, a fact that Plaintiff seemingly acknowledges in the following sentence when he requests that this Court "look[ ] to SSR 96-2p" for guidance. (Pl.'s Br., ECF No. 14, at 22). But SSR 96-2p addresses "giving controlling weight to treating source medical opinions," an issue not otherwise raised by the parties, and thus the reference to this ruling, while consistent with *Hopkins*, appears to have been cited in error. *See* SSR 96-2p. In any event, the notion that *Hopkins* establishes that SSR *96-6p* applies to pre-March 27, 2017 claims is not as clear-cut as Plaintiff suggests.

16

whether the Commissioner had waived his argument in favor of the latter by not reasserting it on appeal, because the alleged failure to order a medical opinion was harmless given that "[s]ubstantial evidence support[ed] the ALJ's conclusion that [the claimant's] impairments do not meet or exceed th[e] [relevant] Listing"). As the Commissioner highlights, Plaintiff's examinations and imaging of the relevant body parts and systems were largely normal, as was her consultative physical examination, and she sometimes reported reduction or cessation of symptoms, including improvement with medication. (Pl.'s Br., ECF No. 14, at 8-10 (citations omitted)). This substantial evidence suffices at this stage to support the ALJ's determination that Plaintiff failed to meet or equal Listing 5.06, whether or not the ALJ should have asked for a medical opinion. *Cf. O'Brien*, 819 F. A'ppx at 416.

Next, Plaintiff brushes aside the ALJ's IBD listing analysis as a mere "recitation" of its components, (Pl.'s Br., ECF No. 14, at 24), but it remains unclear what type of evaluation she would have preferred to the ALJ's step-by-step walk-through of whether each requirement set forth therein had been met. *See Sullivan*, 493 U.S. at 531 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original). Specifically, she claims that the ALJ failed to answer the question "is the plaintiff's condition *equivalent* in severity to IBD as found in listing 5.06[?]" (*id.* (emphasis in original)), but any reasonable reading of the decision reflects that the ALJ answered this question in the negative when she "gave particular attention to the digestive disorder impairments listed in Section 5.00[,] . . . specifically listing 5.06, which addresses inflammatory bowel disease," and concluded that "the claimant's fecal incontinence" (one of her primary potentially IBD-related symptoms at issue on appeal) did not establish the existence of the necessary elements of the listing. (R. 25). Accordingly, this contention is without merit.

Nor is this Court persuaded that the ALJ had to seek a medical expert opinion because no non-examining State agency doctors ever issued substantive physical administrative findings in this case. (Pl.'s Br., ECF No. 14, at 26).  Plaintiff cites no authority for this proposition, and she acknowledges that Drs. Mullin and Klebanoff both performed consultative physical examinations of her. (*Id.*).  Although she highlights that neither questioned the existence of her constipation and fecal incontinence, she complains that the ALJ did not ask either to opine on whether these conditions met or equaled a listing. (*Id.*).  But, again, Plaintiff identifies no requirement that such an unusual step was necessary.  Turning her attention to the consultative opinions themselves, she first posits that Dr. Mullin "did not offer any limitations on functional ability," (*id.* at 26-27), but this contention is patently incorrect.  In fact, Dr. Mullin set forth several such limitations, including in the ability to lift, carry, sit, stand, walk and engage in all the postural maneuvers listed on the form. (R. 939-942).  Plaintiff is also mistaken that Dr. Klebanoff opined only as to areas of functioning that could not be measured[4] "by the type of

---

[4]  Plaintiff alleges that the evaluated functioning would not be "limited" by the type of testing performed, but this appears to be a typographical error. (Pl.'s Br., ECF No. 14, at 27). "A consultative examination is a physical or mental examination or test" used to evaluate a claimant's functioning.  20 C.F.R. § 416.919.  The test does not impede, restrict or "limit" the claimant's functioning.

Along these lines, she further theorizes that the consultative examinations should be disregarded because no limitations associated with her IBD-like symptoms would show up on them unless she was "having acute problems at the time of the exam . . . ." (Pl.'s Br., ECF No. 14, at 27).  However, by this logic, no examination (consultative or otherwise) could ever accurately assess her physical functioning if she was not actively experiencing a flare up while being evaluated by the medical source, no matter how infrequent such episodes might be.  But such an approach could also easily lead to a distorted view of the severity, persistence and limiting effects of the claimant's conditions.  Although the Court acknowledges some appeal in Plaintiff's contention given the potentially substantial differences in functioning depending on whether or not she is experiencing symptoms at any given time, it remains of the view that rather than substitute its judgement for that of the ALJ, who based on her review of the record was aware of the episodic nature of Plaintiff's ailments and could factor that into her analysis, the better course (and the one required by the regulations) is only to ensure that the decision rests upon substantial evidence. *Hartranft*, 181 F.3d at 360.  Because the consultative examinations,

physical limits testing done." (Pl.'s Br., ECF No. 14, at 27). For example, Dr. Klebanoff tested Plaintiff's gait, heel- and toe-walking, squat, stance, range of motion and abilities to zip, button, tie, rise from a chair, and get on and off the examination table, which would reflect her ability to engage in such evaluated activities as reaching, handling, fingering, feeling, using foot controls, climbing (stairs, ramps, ladders and scaffolds), balancing, stooping, kneeling, crouching, and crawling. (R. 1599-1600, 1603-04).

Lastly, Plaintiff's concerns about the purported incompleteness of the record are misplaced. (*See* Pl.'s Br., ECF No. 14, at 28; Reply, ECF No. 30, at 8-9). She maintains that pursuant to *Sims*, *Ferguson* and *Rosa* the ALJ had a heightened duty to develop the record on her behalf because her representation by legal aid attorneys left her "helpless . . . to provide evidence" and thus effectively *pro se*, (Pl.'s Br., ECF No. 14, at 28; Reply, ECF No. 30, at 8-9), but this accusation ignores their efforts to complete the record as reflected in the hearing transcripts. For instance, at the August 12, 2021 hearing, counsel identified missing Brinton Lake medical records, which she later explained were in any event "fairly cumulative of what's already in there," but this evidence totaling approximately 359 pages, plus another 123 pages from Paoli Hospital Outpatient Radiology, was submitted to and reviewed by the ALJ prior to her decision. (R. 63-64, 69-70 (noting that as of the February 13, 2018 hearing the record stopped at Exhibit 16F); *see also* R. 24-25, 27-30 (citing the subsequently filed exhibits)). Indeed, as highlighted by the Commissioner, even now Plaintiff fails to identify what documents are purportedly missing and merely speculates about "the high probability" that more exist. (Reply, ECF No. 30, at 9). Such "[m]ere conjecture or speculation that additional evidence

---

despite their potential limitations, constitute such evidence, the Court declines to disturb the decision on the proffered basis.

might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) (citations omitted).  Finally, this claim fails to account for the fact that Plaintiff has new counsel that can supplement the record going forward, given the outcome of this case as set forth in § V.C, *infra*.

For all the foregoing reasons, the Court declines to remand based on Plaintiff's first and second claims.

### B.    Constipation as an Impairment

#### 1.    The Parties' Positions

Plaintiff contends that the ALJ failed to recognize her severe, painful, frequent and unpredictable constipation as an impairment, even though it sometimes required her to spend 30 minutes in the bathroom attempting to defecate, could last up to five days per episode, was unrelieved by prescribed stool softeners, and at times necessitated emergency room care due to associated pain.  (Pl.'s Br., ECF No. 14, at 4-6 (citing R. 47-48)).  Pointing out that the RFC must reflect all impairments, even "non-severe" ones involving at most a "minimal effect" on the ability to work, Plaintiff insists that in any event the record showed that her constipation was "a major problem."  (*Id.* at 6).  She agrees that the ALJ correctly observed that her Brinton Lake medical records in Exhibit 19F did not substantiate "frequent explosive bowel movements," but she maintains that she never asserted that they did and, more to the point argued here, that they fully established her constipation as a severe impairment.  (*Id.* at 6-7 (citing R. 1624, 1631, 1638, 1648, 1653, 1658, 1665, 1679, 1710, 1733)).  Plaintiff acknowledges that the failure to identify an impairment at step two may be harmless if the ALJ nonetheless later accounts for it in the RFC, but she insists that such an omission, particularly where the impairment would have more than a mild impact on the ability to work, shows that the ALJ did not consider all the evidence as

required and renders the RFC inadequate.  (*Id.* at 6-8 (citing *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005); *McClease v. Comm'r of Soc. Sec.*, No. 08-1673, 2009 WL 3497775 (E.D. Pa. Oct. 28, 2009))).

The Commissioner responds briefly that any error at step two was harmless because the ALJ found that she had other severe impairments and accounted for the limitations associated with her constipation when she subsequently formulated the RFC, noting it 12 times during that assessment.  (Resp., ECF No. 20, at 6 (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *Pallin v. Colvin*, No. 10-4556, 2013 WL 5924972, at *2 (E.D. Pa. Nov. 5, 2013); *Williams v. Comm'r of Soc. Sec.*, No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013))).

In reply, Plaintiff agrees that in light of the ALJ's identification of other severe impairments the decision should not be remanded at step two and acknowledges that the ALJ repeatedly mentioned her constipation when discussing the evidence, but she insists that the ALJ failed to address its impact in the RFC, thus violating the requirements to: (1) consider the entire record; and (2) account for even non-severe impairments.  (Reply, ECF No. 30, at 2-3 (citing 20 C.F.R. § 416.945; SSR 96-8p) (case citations omitted)).  Plaintiff excerpts the ALJ's dozen references to her constipation, but she underscores that recitation of facts does not equate to analysis of them and contends that, if anything, the numerous mentions show that the ALJ understood her constipation was a severe, ongoing, repeatedly diagnosed problem.  (*Id.* at 4-5 (citing *Gongon v. Kijakazi*, 676 F. Supp. 3d 383 (E.D. Pa. 2023); *Perry v. Berryhill*, No. 17-CV-1158, 2018 U.S. Dist. LEXIS 187834, 2018 WL 5734692 (M.D. Pa. Nov. 2, 2018))).  However, she maintains that the ALJ failed to explain how she can work as a retail clerk when her constipation causes her to spend hours on the toilet attempting to defecate and cannot be relieved

21

by laxatives given her concern over "severe, unpredictable and uncontrolled"[5] bowel movements.  (*Id.* at 5).

Plaintiff next questions the ALJ's assertion that her constipation improved with treatment, (Resp., ECF No. 20, at 3), highlighting that the treatment note on which the ALJ relied states that her rectal pain had improved with medication to "once or twice a month," while her constipation had remained "intermittent."  (Reply, ECF No. 30, at 5-6 (citing R. 1919)).  She concludes that, in any event, any improvement in her constipation does not mean that she was cured of or recovered from it and insists that the ALJ failed to properly consider "close to overwhelming" evidence that the condition was severe.  (*Id.* (citing *Lopez v. Kijakazi*, No. 20-cv-327, 2021 WL 4709704 (E.D. Pa. Oct. 7, 2017))).

### 2.      Analysis

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has one or more medical impairments that are "severe."  *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  Under the applicable regulations, a physical impairment is severe only if it significantly limits the claimant's ability to do "basic work activities," i.e., physical "abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  *See* 20 C.F.R. §§ 416.920(c), 416.922(b)(1).  The claimant has the burden of showing that an impairment is severe.  *See Bowen*, 482 U.S. at 146 n.5.  However, even if a claimant carries the burden of demonstrating that a severe impairment was not identified as such, it is well-established that failing to find an impairment severe is harmless error where the ALJ nonetheless identifies other such impairments at the second step

---

[5]  Plaintiff footnotes that these descriptors differ from "frequent" or "explosive" bowel movements, which the ALJ determined were unsupported by the cited Brinton Lake records. (Reply, ECF No. 30, at 5 n.5 (citation omitted)).

and accounts for the limitations associated with the otherwise overlooked impairment in the remainder of the five-step review. *See, e.g.*, *Salles*, 229 F. App'x at 145 n.2; *Shedden v. Astrue*, No. 4:10-CV-2515, 2012 WL 760632, at *9 (M.D. Pa. Mar. 7, 2012).

Here, the parties agree that the ALJ identified severe impairments at step two (poorly differentiated adenocarcinoma of the rectum, intermittent fecal incontinence and obesity) but dispute whether she sufficiently accounted for Plaintiff's constipation with her RFC restrictions requiring ready access to a bathroom and allowing for off-task work up to five percent of the workday (beyond normal breaks). (*See* R. 24, 26). In support of Plaintiff's position that these restrictions did not fully address her constipation-related limitations, she points primarily to her testimony regarding the duration of her constipation (both in terms of time spent in the restroom during an individual attempt to defecate and how many days she sometimes went overall without doing so) and her lack of relief from stool softeners at times resulting in the need for emergency care, as well as her Brinton Lake treatment notes allegedly confirming that her constipation was "severe." (Pl.'s Br., ECF No. 14, at 4-7 (internal citations omitted); Reply, ECF No. 30, at 3-4 (internal citations omitted)). However, Plaintiff ignores the ALJ's finding that the medical records did not support the degree of limitations claimed by her, (R. 27), at least in part because "[s]he reported better response to prescribed Linzess[6] in August 2019, with only intermittent constipation . . . ." (R. 29 (citing R. 1919)).

Rather, Plaintiff maintains that the ALJ's dozen references[7] to her constipation only serve

---

[6] Plaintiff herself points out that "Linzess . . . treats and relieves irritable bowel syndrome (IBS) and chronic constipation." (Pl.'s Br., ECF No. 30, at 5 n.6).

[7] Despite acknowledging the ALJ's numerous mentions of her constipation, Plaintiff still complains that the ALJ's purported failure to include in the RFC all the limitations allegedly flowing from the condition shows that the ALJ did not consider the entire record. (Pl.'s Br., ECF No. 14, at 6-8 (citations omitted); Reply, ECF No. 30, at 3 (citations omitted)). But an ALJ is not required to mention "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F.

23

as a mere "recitation of the facts" rather than the required analysis and confirm "that the ALJ was well aware that constipation was a severe problem," (Reply, ECF No. 30, at 4), but from this lengthy discussion the Court in fact finds itself able "to trace the path of [her] reasoning,"[8] 82 Fed. Reg. 5844-01, at 5858, i.e., that Plaintiff's constipation ultimately improved with treatment, even if, as summarized by Plaintiff, "[i]t was both a major complaint . . . and a well established diagnosis, over a considerable period of time." (Reply, ECF No. 30, at 4-5).  Plaintiff attempts to refute the ALJ's improvement finding by observing that the cited treatment note stated that it was her *rectal pain* that "happens maybe once or twice a month," but the ALJ never contended that her constipation had reduced to this frequency, instead only concluding (as the note itself reflected) that it was "intermittent."  (*See* R. 29 (citing R. 1919); R. 1919 (additionally noting that "[o]verall she continues to do well")).

Plaintiff then pivots to arguing that even if her constipation had improved she was not "cured" and had not "recovered," (Reply, ECF No. 30, at 6 (citing *Lopez*, 2021 WL 4709704 ("courts have recognized that someone who responds positively to treatment is not necessarily able to work"))), but it is equally beyond cavil that a claimant need not be symptom-free in order to be found not disabled.  *See Andreolli v. Comm'r of Soc. Sec.*, No. 07-1632, 2008 WL

---

App'x 130, 133 (3d Cir. 2004), and the ALJ had a substantial basis for omitting from the RFC the restrictions proffered by Plaintiff, for the reasons explained in the text.

[8] This finding distinguishes this case from *Gongon* and *Perry*, cited by Plaintiff.  In *Gongon*, I rejected the Commissioner's attempt to equate the summary of a treating provider's medical opinion with an analysis of whether the provider's treatment notes supported the opinion required by 20 C.F.R. § 404.1520c(c)(1), even though, "on its face, the ALJ's decision ma[de] no mention" of this consideration, thus depriving the Court of the ability to follow her logic.  676 F. Supp. 3d at 396.  In *Perry*, the ALJ rejected the claimant's subjective statements based on "the reasons explained in this decision" without actually providing any, likewise depriving the reviewing federal court of the ability to assure itself that the decision was based on substantial evidence.  2018 WL 5734692, at *14.

5210682, at *4 (W.D. Pa. Dec. 11, 2008) ("[I]t is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled.") (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)); *see also Penn v. Berryhill*, No. CV 17-922, 2018 WL 2365432, at *3 (W.D. Pa. May 24, 2018) ("the fact that [a] [p]laintiff suffers from a particular medical condition does not alone translate to evidence of a particular work-related limitation."). Here, even if the ALJ should have noted at step two that Plaintiff's constipation constituted a "severe" impairment, she was not required on that basis to find that it rendered Plaintiff disabled where she later determined that it had substantially improved.[9]

Accordingly, the Court declines to remand this matter on the basis of Plaintiff's third claim.[10]

### C.    Physical RFC (Fecal Incontinence)

#### 1.    The Parties' Positions

In her fourth claim, Plaintiff alleges that the ALJ erred in the formulation of her RFC by

---

[9] Plaintiff also returns to the notion that one cannot help but look at the Brinton Lake medical records and conclude that her constipation was "severe," (Pl.'s Br., ECF No. 14, at 7), but as she correctly acknowledged at the outset of her argument, a failure by the ALJ to acknowledge even a severe impairment as such does not constitute reversible error if, as here, the ALJ nonetheless accounts for it in the RFC. *Salles*, 229 F. App'x at 145 n.2.

[10] Plaintiff's remaining contention in support of this claim is that the ALJ neglected to explain how she is able to work as a retail clerk when her constipation requires her to spend hours on the toilet because she cannot take laxatives due to her fear of "severe, unpredictable and uncontrolled" bowel movements, which she distinguishes from the "frequent explosive" ones that the ALJ found unsubstantiated by the record. (Pl.'s Br., ECF No. 14, at 6-7 (citing Ex. 19F)). However, the Court finds that it is premature to rule upon Plaintiff's arguments regarding the ALJ's consideration of her subjective complaints about her fecal urgency and incontinence in light of its determination, discussed in the next section, that the ALJ gave no indication of having considered certain relevant medical records relating to these conditions. (*See, infra,* § V.C.2; *see also, infra*, n.13). Moreover, Plaintiff's contentions relating to her fecal urgency and incontinence are more appropriately lodged in conjunction with her fourth claim pertaining to those conditions than under this one, which primarily concerns her constipation.

failing to properly account for her unpredictable fecal incontinence and by randomly assessing an "off-task" limitation of only five percent of a normal workday. (Pl.'s Br., ECF No. 14, at 8). In support of this claim, she excerpts her hearing testimony that she wears an adult diaper because she has accidents, that the accidents require her to shower afterwards, that she sometimes spends "many hours" on the toilet due to her incontinence, and that it worsens at night, disrupting her sleep. (*Id.* at 8-10 (citing R. 49-53)). She reiterates that although the ALJ denied that the record supported the occurrence of "frequent explosive bowel movements," this conclusion misses the mark because her testimony (consistent with her diary entries) was instead that she had "intermittent" and "unpredictable" ones. (*Id.* at 10 (citing R. 756-61)). Although Plaintiff acknowledges that the Brinton Lake records cited by the ALJ in support of her conclusion "do[ ] contain only a few references to fecal inconstancy [sic: incontinence]," such as diarrhea following constipation or treatment therefor, she further observes that her oncology records with Main Line Cancer Center better document and contain repeated references to this problem, but the ALJ failed to mention this evidence in her decision. (*Id.* at 10-12 (citing R. 1404-1459, 1619-1840)).

Additionally, Plaintiff cites the consultative opinions of Drs. Mullin and Klebanoff, who both diagnosed, *inter alia*, "intermittent bowel incontinence," "diarrhea," and "fecal incontinence." (*Id.* at 12-13 (citing 950, 1600)). She concedes that her complaints of incontinence are subjective to a degree and not fully verifiable unless someone is with her constantly, but she emphasizes that her incontinence (like her constipation) is also a "physical phenomen[en] that can be observed" and that neither consultative examiner doubted her reports that she sometimes has fecal urgency and incontinence due to "explosive bowel movements which acutely come on without notice," causing difficulty with ADLs outside the home. (*Id.* at

26

13 (citing R. 948, 1323, 1597)).  Next, Plaintiff points out that pursuant to SSR 16-3p the ALJ must account for subjective complaints about medically determinable impairments unless contradicted by other evidence, but she maintains that the ALJ improperly dismissed them here based on her own misplaced finding that the evidence did not establish "frequent explosive bowel movements" (as detailed above) and using meaningless boilerplate about the purported lack of "intensity, persistence and limiting effects" of Plaintiff's condition.  (*Id.* at 14-15 (internal citations omitted)).  She accuses the ALJ of failing to cite any evidence that she does not have severe constipation and "unpredictable, and sometimes uncontainable," loose stools and of simply substituting the ALJ's own views for the requirements of SSR 16-3p.  (*Id.* at 16).

In her related fifth claim, Plaintiff argues generally that her RFC "did not account for [her] limitations."  (*Id.* at 18).  She notes that the ALJ testified that an RFC that permitted Plaintiff to miss more than three days of work per month, shower at work or have "ready access to a bathroom" would be work-preclusive, and even if "ready" were omitted she would still be required to complete a substantial amount of work during her shift.[11]  (*Id.* at 19 (citing R. 55-57)).  However, Plaintiff maintains that her constipation and fecal incontinence would necessitate her spending "several hours" in the restroom every few days and showering after accidents, respectively, rendering her off-task greater than five percent of the workday and likely causing her to miss more than three days of work monthly.  (*Id.* at 19-20).

In a short response to these two claims, the Commissioner recites the applicable background law, posits that the ALJ's RFC (even without greater restroom access) was appropriate and fact-based, and summarizes the supporting evidence referenced above in §

---

[11]  She adds that the ALJ and VE also failed to define "ready" access and that without further information such access may still be inadequate since even at home she often cannot reach the restroom in time to avoid accidents.  (Pl.'s Br., ECF No. 14, at 20).

V.A.1.  (Resp., ECF No. 20, at 7-10 (citations omitted)).  Plaintiff replies briefly that this evidence fails to establish that she does not suffer from constipation or from "intermittent but severe[ ] and unpredictable and uncontrolled bowel movements" and that, in fact, much of it confirms a diagnosis for the former.  (Reply, ECF No. 30, at 8).  As for her fecal urgency and incontinence, she repeats her contentions regarding the ALJ's mischaracterization of her complaint as one of "frequent, explosive bowel movements" and again observes that it not likely that she would happen to have an episode just when she was visiting a physician.  (*Id.*).

### 2.    Analysis

RFC is "the most a [Plaintiff] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  To determine the RFC, the ALJ must base the assessment on "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3); *Fargnoli*, 247 F.3d at 41.  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *Id*.  The ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981).

Moreover, under Social Security Ruling 16-3p, the ALJ must follow a two-step process in evaluating the Plaintiff's subjective symptoms specifically: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the Plaintiff's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's functioning.  SSR 16-3p, 2016 WL 1119029, at *4-8 (Mar. 16, 2016).  In evaluating the

intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider relevant factors such as the objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of Plaintiff's statements with the other evidence of record. *Id.*

It is within the province of the ALJ to evaluate the credibility of a claimant. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). "Although 'any statements of the individual concerning [his] symptoms must be carefully considered,' the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96–7p and 20 C.F.R. § 404.1529(a)). An ALJ's "findings on the credibility of [a] claimant [] 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citation omitted). An ALJ may disregard a claimant's subjective complaints when contrary evidence exists in the record. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). However, the ALJ must provide her reasons for discounting a claimant's testimony. *Burnett*, 220 F.3d at 122; *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

Here, remand is required because no indication exists that the ALJ considered the evidence of Plaintiff's fecal urgency and incontinence from Main Line Cancer Center contained in Exhibit 16F.[12] Although the ALJ failed to cite or otherwise mention these records, they reflect, *inter alia*, that following episodes of constipation she would experience "intermittent difficulty with fecal urgency" characterized by "frequent loose bowel movements" that left her "very wary of going out . . . ." (R. 1407, 1421, 1431). Despite the fact that this Court has

---

[12] The Court notes that it has not considered this argument vis-à-vis Plaintiff's other claims because she lodged it only in support of the instant one.

repeatedly observed that an ALJ need not mention every "tidbit" of evidence, *Hur*, 94 F. App'x at 133; (*see also, supra*, n.7), it does not extend this notion to excuse the apparent disregard of a substantial body of medical records addressing one (or more) of the claimant's severe impairments, particularly when that evidence seemingly speaks directly to conclusions by the ALJ that may have shaped the RFC.  (*See* R. 28 ("The records do not support a finding of frequent explosive bowel movements.")).  Although this Court offers no opinion as to whether the ALJ's proper review of the Main Line Cancer Center records will, in fact, alter Plaintiff's RFC, it cannot let stand a decision that leaves the Court questioning whether "all of the relevant medical and other evidence" was reviewed.  20 C.F.R. § 416.945(a)(3).  As such, the matter is remanded for review of these records.[13]

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is granted, and the matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[13]  The Court does not address Plaintiff's arguments regarding the ALJ's treatment of the consultative examiners' opinions and her subjective complaints because consideration of the Main Line Cancer Center records may lead the ALJ to assign them different weight upon remand.  Similarly, the Court does not resolve her contention that "ready" access to a restroom may not fully account for the limiting effects of her fecal urgency and incontinence because, upon review of the Main Line Cancer Center documents, the ALJ may formulate a new RFC that omits or alters this restriction.